# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JAMES MULDOON, <br><br> Plaintiff, <br><br> v. <br><br> PENN STATE HEALTH, *et al.*, <br><br> Defendants. | Case No. 1:25-CV-01181 <br><br> Hon. Karoline Mehalchick |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Miguel F. Eaton*
David T. Raimer*
Damarr M. Butler*
Thomas E. Hopson*
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Tel.: (202) 879-3939
Fax: (202) 616-1700
meaton@jonesday.com
dtraimer@jonesday.com
thopson@jonesday.com

Joseph N. Parsons
PA Atty. ID 316724
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514
Tel.: (412) 391-3939
Fax: (412) 394-7959
jparsons@jonesday.com

*Counsel for Defendants*

*Pro hac vice application forthcoming

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................2

I.     PLAINTIFF LACKS ARTICLE III STANDING..........................................................2

II.    PLAINTIFF FAILS TO STATE A CLAIM. ...............................................................5

      A.     Plaintiff Fails to State a Claim as to the Alleged Misuse of
           Forfeited Funds in the 401(k) Plan..........................................................6

           1.     ERISA Does Not Require Using Forfeited Funds To Pay
                 Plan Expenses. .........................................................................6

           2.     Plaintiff Cannot State an Anti-Inurement Claim. .......................9

      B.     Plaintiff Fails to State a Claim Regarding the Great West GICs.......10

           1.     Plaintiff Lacks Standing To Sue on Behalf of the 401(k)
                 Plan..........................................................................................10

            2.     Plaintiff Does Not Plausibly Allege a Breach of the Duty
                 of Prudence .............................................................................11

      C.     Plaintiff Fails To State a Plausible Claim Regarding the 401(k)
           Plan's Recordkeeping Fees. .............................................................17

      D.     The Complaint Fails To State a Failure-to-Monitor Claim................22

CONCLUSION.....................................................................................................22

CERTIFICATE OF SERVICE .........................................................................23

CERTIFICATE OF COMPLIANCE................................................................24

i

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
137 F.4th 1015 (9th Cir. 2025) ....................................................................14, 16

*Barragan v. Honeywell Int'l Inc.*,
2025 WL 2383652 (D.N.J. Aug. 18, 2025) ........................................................9

*Becerra v. Bank of America, Corp.*,
2025 WL 3032922 (W.D.N.C. Aug. 12, 2025) ...................................................9

*Binder v. PPL Corp.*,
2024 WL 1096819 (E.D. Pa. Mar. 12, 2024) ....................................................14

*Boley v. Universal Health Services, Inc.*,
36 F.4th 124 (3d Cir. 2022) .............................................................................11

*Brieger v. Tellabs, Inc.*,
473 F. Supp. 2d 878 (N.D. Ill. 2007) .................................................................5

*Brown v. Peco Foods, Inc.*,
2025 WL 3210857 (S.D. Miss. Nov. 14, 2025) ..................................................8

*Buescher v. N. Am. Lighting, Inc.*,
2025 WL 1927503 (C.D. Ill. June 30, 2025) ......................................................9

*Cain v. Siemens Corp.*,
2025 WL 2172684 (D.N.J. July 31, 2025) ...................................................6, 7, 9

*Cho v. Prudential Ins. Co. of Am.*,
2021 WL 4438186 (D.N.J. Sept. 27, 2021) ...........................................12, 13, 17

*Cockerill v. Corteva, Inc.*,
345 F.R.D. 81 (E.D. Pa. 2023) ...........................................................................5

*Collins v. Ne. Grocery, Inc.*,
149 F.4th 163 (2d Cir. 2025) ............................................................................11

*Cunningham v. Cornell University*,
604 U.S. 693 (2025)................................................................................18, 19

*Davis v. FEC*,
554 U.S. 724 (2008)....................................................................................10

*Davis v. Wash. Univ. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) ......................................................................20

*Del Bosque v. Coca-Cola Sw. Beverages, LLC*,
2025 WL 3171326 (N.D. Tex. Nov. 13, 2025) ..............................................8

*Esquivel v. Whataburger Rests. LLC*,
2024 U.S. Dist. LEXIS 205243 (W.D. Tex. Nov. 8, 2024)............................3, 4

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)........................................................................1, 7, 12, 13

*Gonzalez v. JPMorgan Chase Bank, NA*,
2025 WL 2458344 (D.N.J. Aug. 26, 2025) ..............................................2, 3, 4

*Gonzalez v. Northwell Health, Inc.*,
632 F. Supp. 3d 148 (E.D.N.Y. 2022) ..........................................................17

*Hernandez v. AT&T Servs., Inc.*,
2025 WL 3208360 (C.D. Cal. Nov. 14, 2025) ................................................8

*Hutchins v. HP Inc.* (*Hutchins II*),
767 F. Supp. 3d 921 (N.D. Cal. Feb. 5, 2025)..............................................7, 8

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ......................................................................2, 4

*Johnson v. Couturier*,
2006 WL 2943160 (E.D. Cal. Oct. 13, 2006)..................................................5

*Johnson v. PNC Fin. Servs. Grp., Inc.*,
2021 WL 3417843 (W.D. Pa. Aug. 3, 2021)..................................................13

*Kruchten v. Ricoh USA, Inc.*,
   2024 WL 3518308 (3d Cir. July 24, 2024) ........................................................19

*Lalonde v. Mass. Mut. Ins. Co.*,
   728 F. Supp. 3d 141 (D. Mass. 2024)................................................................16

*Leveto v. Lapina*,
   258 F.3d 156 (3d Cir. 2001) .............................................................................19

*Matousek v. MidAmerican Energy Co.*,
   51 F.4th 274 (8th Cir. 2022) ............................................................................13

*Mator v. Wesco Distribution, Inc.*,
   102 F.4th 172, 188 (3d Cir. 2024) ...............................................................13, 20

*Matney v. Barrick Gold of N. Am.*,
   80 F.4th 1136 (10th Cir. 2023) ........................................................................13

*McManus v. Clorox Co.*,
   2025 WL 732087 (N.D. Cal. Mar. 3, 2025) .......................................................9

*McWashington v. Nordstrom, Inc.*,
   2025 WL 1736765 (W.D. Wash. June 23, 2025) ................................................8

*Perez-Cruet v. Qualcomm Inc.*,
   2024 WL 2702207 (S.D. Cal. May 24, 2024) .....................................................9

*Pinnell v. Teva Pharms. USA, Inc.*,
   2020 WL 1531870 (E.D. Pa. Mar. 31, 2020) ....................................................14

*Polanco v. WPP Grp USA, Inc.*,
   2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025).....................................................8

*Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*,
   541 U.S. 1 (2004)..............................................................................................9

*Rodriguez v. Intuit Inc.*,
   744 F. Supp. 3d 935 (N.D. Cal. 2024)...............................................................8

iv

*Seibert v. Nokia of Am. Corp.*,
  2023 WL 5035026 (D.N.J. Aug. 8, 2023) ..........................................................13

*Stewart v. Nextera Energy, Inc.*,
  2025 WL 3098085 (S.D. Fla. Aug. 14, 2025) ........................................................8

*Sweda v. University of Pennsylvania*,
  923 F.3d 320 (3d Cir. 2019) ............................................................................13

*Thole v. U.S. Bank N.A.*,
  590 U.S. 538 (2020)........................................................................................10

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)........................................................................................10

*United States v. Butler*,
  297 U.S. 1 (1936)..............................................................................................3

*Waldner v. Natixis Inv. Managers, L.P.*,
  2023 WL 3466272 (D. Mass. Mar. 24, 2023) ......................................................5

*Woolley v. Groft*,
  653 F. Supp. 3d 171 (M.D. Pa. 2023)..................................................................3

*Wright v. JPMorgan Chase & Co.*,
  2025 WL 1683642 (C.D. Cal. June 13, 2025)......................................................8

**STATUTES**

29 U.S.C. § 1108........................................................................................................18

**OTHER AUTHORITIES**

DOL, Instructions for Form 5500 .............................................................................21

**INTRODUCTION**

Plaintiff's opposition brief expends a great deal of words attempting to escape the inescapable: his Complaint should be dismissed. At the most basic level, Plaintiff lacks standing because he signed a covenant not to bring this very suit. And on the merits, each of his claims suffers from fatal, fundamental flaws. While Plaintiff alleges a misuse of forfeited funds, his claim contravenes the plain text of the Plan documents, Supreme Court precedent, and the many district court decisions that have rejected his exact arguments. While Plaintiff alleges that the Plans made imprudent investments, his claim reduces to allegations that an investment option (occasionally) underperformed a rotating assortment of inapt, cherry-picked comparators on a single metric. And while Plaintiff alleges that the Plans paid excessive recordkeeping fees, his own Complaint (and the documents incorporated therein) makes clear that the fees were completely reasonable.

The Supreme Court has emphasized the need for "careful, context-sensitive scrutiny of [plaintiffs'] allegations" to separate "the plausible sheep from the meritless goats" in the ERISA context. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). And here, that scrutiny demonstrates that Plaintiffs allegations fall far short of what would be needed to entitle him to costly and burdensome discovery. For those reasons, as well as the others that follow, this Court should dismiss Plaintiff's Complaint.

## ARGUMENT

### I.   PLAINTIFF LACKS ARTICLE III STANDING.

Plaintiff lacks standing to proceed for the simple reason that he signed a Severance Agreement that includes a covenant not to sue Defendants under ERISA.[1] *See* Mem. in Supp. of Mot. to Dismiss ("MTD") 9-13, Dkt. 13.  In particular, Section 4 of the Agreement provides that Plaintiff "will not … institute" any "claim" or "lawsuit" against Defendants "asserting any claims released in Section 3."  MTD Ex. 3 at 3, Dkt. 13-4.  And Section 3, in turn, waives and releases all "claims," "suits," and "causes of action" that arise under "ERISA," except those that "cannot be waived by law."  *Id.* at 3.  These provisions bar every claim in this lawsuit; Plaintiff's contrary arguments are unpersuasive.

*First*, Plaintiff questions the enforceability of covenants not to sue.  Opp. 8. But as Defendants explained, while existing precedent prevents enforcing agreements to *release* ERISA claims that "belong to [a] Plan," the Third Circuit has acknowledged that individual plaintiffs may agree *not to sue* on a plan's behalf.  *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594-95, 599 (3d Cir. 2009); MTD 12.  Such agreements "are enforceable" and have been enforced—repeatedly. *E.g.*, *Gonzalez v. JPMorgan Chase Bank, NA*, 2025 WL 2458344, at *3 (D.N.J. Aug.

---

[1] Throughout this Reply, Defendants use the same abbreviations employed in their initial brief.

26, 2025); *Esquivel v. Whataburger Rests. LLC*, 2024 U.S. Dist. LEXIS 205243, at *17-19 (W.D. Tex. Nov. 8, 2024).  Thus, while Plaintiff cannot *release* claims held by the Plans, he can agree not to bring "suits" or "causes of action" to vindicate those claims on the Plans' behalf.  MTD Ex. 3 at 3.

*Second*, Plaintiff maintains that the Severance Agreement contains no "separate and distinct" covenant not to sue.  Opp. 9.  By his lights, "the provision that Defendants identify" has no independent legal significance, but rather is coextensive with Section 3's "release." *Id.* at 8.

At the outset, Plaintiff's argument ignores that the covenant Defendants identified—literally—appears in a separately numbered section entitled "Initiation of Legal Action."  MTD Ex. 3 at 3; *cf. Gonzalez*, 2025 WL 2458344, at *3 (holding a covenant in its own "numbered section" was enforceable).  More fundamentally, Plaintiff's argument runs afoul of "the general rule that courts are to give effect to each word in a contract." *Woolley v. Groft*, 653 F. Supp. 3d 171, 183 n. 4 (M.D. Pa. 2023).  Plaintiff offers no explanation for why the parties would include a separate Section 4 expressly precluding Plaintiff from individually "initiat[ing]" or "institut[ing]" an action "against any Released Party" if that language did not *go beyond* the effect of Section 3's release.  MTD Ex. 3 at 3.  "These words cannot be meaningless, else they would not have been used." *United States v. Butler*, 297 U.S. 1, 65 (1936).  Plaintiff's interpretation, however, would render them mere

3

surplusage.  And in any event, while Section 4 refers to rights "released in Section 3," one of those rights is the ability to bring "suits" and "causes of action" under ERISA—rights Plaintiff can plainly waive, as he did here.  MTD Ex. 3 at 3.[2]

*Third*, Plaintiff argues that *Gonzalez* and *Esquivel* are distinguishable because they "involved explicit Class Action waivers."  Opp. 9.  But neither decision depended on the inclusion of such language, *Gonzalez*, 2025 WL 2458344, at *3-4; *Esquivel*, 2024 U.S. Dist. LEXIS 205243, at *17-19, and Plaintiff does not explain why that language would be essential to a valid covenant not to sue.  Nor could he. After all, nothing precludes a Plaintiff from agreeing not to file a lawsuit—or from settling a lawsuit that he has already filed.  *See* MTD 11-12; *Schering Plough*, 589 F.3d at 599.  And once he does so, he is bound by that agreement, both as an individual and as a class representative.

*Fourth*, Plaintiff misquotes Section 4 to contend that the covenant not to sue covers only "'claims released in Section 3'" that could be brought "'*on Employee's behalf*'"—and thus does bar him from asserting fiduciary-duty claims brought on behalf of the Plans. Opp. at 8.  But the phrase "on Employee's behalf" in Section 4 governs *whom the covenant binds*, not the claims it covers.  MTD Ex. 3 at 3 ("Employee agrees that Employee, or anyone on Employee's behalf, … will not

---

[2] Alternatively, as Defendants have explained, without rebuttal, that language in Section 3 independently precludes Plaintiff's "suit" here.  *See* MTD 10-11.

4

initiate…").  It thus has no bearing on whether the claims here are covered by that provision.

*Finally*, Plaintiff's cited decisions are inapposite.  Opp. 9.  One declined to enforce a "purported covenant not to sue" because it was simply an "explanation of [a] release provision[]" that appeared in the "same numbered section of the document."  *Waldner v. Natixis Inv. Managers, L.P.*, 2023 WL 3466272, at *17 (D. Mass. Mar. 24, 2023).  Not so here.  *Supra* p. 3.  Another rejects the Third Circuit's distinction between releases of plan-held ERISA claims (which are not enforceable) and covenants not to sue (which are).  *Johnson v. Couturier*, 2006 WL 2943160, at *2 (E.D. Cal. Oct. 13, 2006).  A third is a class-certification ruling that does not address the enforceability of any contractual provision.  *Cockerill v. Corteva, Inc.*, 345 F.R.D. 81, 120-21 (E.D. Pa. 2023).  And a fourth held that a plaintiff's claims fell within a release's carve-out for "vested benefits."  *Brieger v. Tellabs, Inc.*, 473 F. Supp. 2d 878, 886 (N.D. Ill. 2007).  Plaintiff here has never argued or alleged that he was deprived of vested benefits.  To the contrary, his entire theory of the case is that he is entitled to funds *beyond* those vested in his accounts with the Plans.

## II.    PLAINTIFF FAILS TO STATE A CLAIM.

Even if Plaintiff has standing to sue, he fails to state a plausible claim concerning Defendants' use of forfeited funds, their retention of the Great West GICs, or their monitoring of recordkeeping costs.

### A. Plaintiff Fails to State a Claim as to the Alleged Misuse of Forfeited Funds in the 401(k) Plan.

#### 1. ERISA Does Not Require Using Forfeited Funds To Pay Plan Expenses.

As Defendants explained, because the 401(k) Plan document authorizes the use of forfeited funds to reduce employer contributions, Plaintiff's forfeiture claim depends on showing that ERISA's fiduciary duties *override* that authorization. MTD 13. This he cannot do. As courts in this Circuit (and across the country) have overwhelmingly held, litigants may not use ERISA's fiduciary duties "to create a new benefit [for] participants"—here, the use of forfeited funds to pay administrative expenses—"that is not provided in the plan document itself," *Cain v. Siemens Corp.*, 2025 WL 2172684, at *4-5 (D.N.J. July 31, 2025); MTD 14-15 & n.5. Nothing more is required to dismiss Plaintiff's claim.

In response, Plaintiff says surprisingly little. He does not dispute that the plan document authorizes the exact use of the funds at issue. MTD 15. He does not engage with Supreme Court precedent countering his theory of the case. *Id.* at 15-16. He does not contest that his position would upend longstanding practice. *Id.* at 17-18. And he does not deny that any duty-of-prudence challenge to the use of forfeited funds rises or falls with his duty-of-loyalty arguments. *Id.* at 18 n.6. Instead, he accuses Defendants of attacking a "strawman" and attempts to distinguish the litany of cases rejecting his position. Opp. 25-30. Neither effort succeeds.

*First*, though he denies adopting a "categorical rule" that "fiduciaries must always use forfeitures to pay plan expenses," Opp. 25, 27, Plaintiff cannot escape the "implausible breadth" of his allegations.  *Hutchins v. HP Inc.* (*Hutchins II*), 767 F. Supp. 3d 921, 926-27 (N.D. Cal. Feb. 5, 2025).  While Plaintiff asserts that his proposed rule depends on "context," Opp. 28, he does not (and cannot) point to any allegation in his Complaint that is context-specific.  To the contrary, his Complaint takes the position that forfeitures *must* be used to pay Plan expenses, "[a]bsent any risk that [PSH] would be unable to satisfy its contribution obligations."  Compl. ¶ 132; Opp. 5, 28.  And a rule with a single, categorical exception is still a categorical rule.  Indeed, Plaintiff's proposed standard is indistinguishable from presumptions the Supreme Court has rejected as inconsistent with ERISA's "context specific" analysis.  *See Dudenhoeffer*, 573 U.S. at 423, 425 (refusing to presume that it is *always* prudent for an employee-owned stop plan to "buy[] or hold[]" the company's stock, "unless [that] company is on the brink of collapse"); MTD 15-16.  For those reasons, courts have repeatedly rejected the argument Plaintiff advances here.  *E.g.*, *Cain*, 2025 WL 2172684, at *5 (noting that a plaintiff's "theory would impose categorical liability"); Am. Compl. ¶ 28, *Cain*, No. 24-cv-08730 (D.N.J. Nov. 13, 2024), Dkt. 19 (proposing the same theory as Plaintiff here); *Hutchins II*, 767 F. Supp. 3d at 926-27 (deeming a rule with an exception for employer "default[]" impermissibly "categorical").

*Second*, Plaintiff fares no better when attempting to explain away the many decisions that have dismissed forfeiture claims—a list that has only grown since Defendants' initial filing. *E.g.*, *Hernandez v. AT&T Servs., Inc.*, 2025 WL 3208360 (C.D. Cal. Nov. 14, 2025); *Brown v. Peco Foods, Inc.*, 2025 WL 3210857 (S.D. Miss. Nov. 14, 2025); *Del Bosque v. Coca-Cola Sw. Beverages, LLC*, 2025 WL 3171326 (N.D. Tex. Nov. 13, 2025); *Polanco v. WPP Grp USA, Inc.*, 2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025); MTD 14 n.5. To start, Plaintiff makes no effort to distinguish the four in-Circuit decisions that go against him. *See id.* And though he does attempt to distinguish two cases Defendants never cited, Opp. 26 (citing *Naylor* and *Nykiel*), Plaintiff ignores six of the nine out-of-circuit decisions Defendants actually relied upon. MTD 14 n.5. As for the remaining three, Plaintiff points to *alternative holdings*, ignoring that these cases also dismissed forfeiture claims for the reasons Defendants advance here. *Hutchins II*, 767 F. Supp. 3d at 923-27; *Wright v. JPMorgan Chase & Co.*, 2025 WL 1683642, at *4 (C.D. Cal. June 13, 2025); *McWashington v. Nordstrom, Inc.*, 2025 WL 1736765, at *14 (W.D. Wash. June 23, 2025).

The decisions Plaintiff invokes on his side of the divide are similarly unhelpful. Two turned on arguments that the use of forfeited funds at issue was *forbidden* by the governing plan documents, *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 944 (N.D. Cal. 2024); *Stewart v. Nextera Energy, Inc.*, 2025 WL 3098085

(S.D. Fla. Aug. 14, 2025)—an issue not raised here.  Another was early-in-time and lacked the benefit of every subsequent decision to later reject a forfeiture claim. *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207, at *2 (S.D. Cal. May 24, 2024). A third sustained a forfeiture claim without substantive analysis.  *Becerra v. Bank of America*, *Corp.*, 2025 WL 3032922 (W.D.N.C. Aug. 12, 2025).  And for the reasons Defendants have previously articulated, the remaining two are simply unpersuasive. *McManus v. Clorox Co.*, 2025 WL 732087 (N.D. Cal. Mar. 3, 2025); *Buescher v. N. Am. Lighting, Inc.*, 2025 WL 1927503 (C.D. Ill. June 30, 2025).  Indeed, courts in this Circuit have expressly declined to follow their analysis.  *E.g.*, *Barragan v. Honeywell Int'l Inc.*, 2025 WL 2383652, at *4 (D.N.J. Aug. 18, 2025); *Cain*, 2025 WL 2172684, at *5 n.3.  This Court should do likewise.

### 2.    Plaintiff Cannot State an Anti-Inurement Claim.

Plaintiff's half-hearted defense of his anti-inurement claim is equally unpersuasive.  To start, Plaintiff declines to dispute that the defendants he named in this count *do not control* the forfeited funds—a fact independently fatal to his claim. MTD 19.  But regardless, because ERISA's anti-inurement provision "demands only that plan assets be held for supplying benefits to plan participants,"  *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22 (2004), there can be no violation where, as here, plan assets were admittedly used for precisely that purpose, Compl. ¶ 20, 138-39 (alleging that forfeitures were used to fund participant

9

benefits).  While Plaintiff notes that two courts have rejected that conclusion, Opp. 30, he ignores that the overwhelming weight of authority has gone the other way, MTD 20.  His anti-inurement claim thus merits dismissal.

### B. Plaintiff Fails to State a Claim Regarding the Great West GICs.

This Court should also dismiss the claim that Defendants breached the duty of prudence by offering Great West GICs to participants in the Plans.

### 1. Plaintiff Lacks Standing To Sue on Behalf of the 401(k) Plan.

The problem with Plaintiff's standing to challenge inclusion of the Great West GIC in the 401(k) Plan is straightforward.  Plaintiff must allege a concrete and particularized injury that can be redressed by a favorable decision.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); MTD 21.  And he must do so for "each claim" and every "form of relief" that he seeks.  *Davis v. FEC*, 554 U.S. 724, 734 (2008).  But Plaintiff does not allege that the availability of the GIC in the 401(k) Plan harmed him in any way.  MTD 21.  Nor would Plaintiff receive a single cent if this Court awards damages to that Plan's participants on the exact theory he advances here.  *Id.*  Plaintiff thus lacks standing to press his claim as to the 401(k) Plan.

Plaintiff responds by insisting that the injury-in-fact requirement does not apply to "ERISA plaintiffs."  Opp. 10.  But the Supreme Court rejected that argument in *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020).  Like all litigants, ERISA plaintiffs must "plausibly and clearly allege a concrete injury."  *Id.* at 544.  And while Plaintiff

10

suggests that Article III contains a carveout for defined-contribution plans, Opp. 11, that is not true either. *See Collins v. Ne. Grocery, Inc.*, 149 F.4th 163, 171 (2d Cir. 2025) ("[D]efined contribution plan participants seeking to obtain monetary relief for alleged ERISA violations must allege a non-speculative financial loss actually affecting … their individual retirement accounts.").

Plaintiff argues that his challenge is nonetheless authorized by *Boley v. Universal Health Services, Inc.*, 36 F.4th 124 (3d Cir. 2022). But that case involved a challenge to a "suite" of "excessively expensive funds" in a single retirement plan. *Id.* at 131-32. Even though the plaintiffs had invested in some (but not all) of those funds, the court held they had standing because the funds were, "in effect," a package deal: the "decision to offer the suite" was "one decision that led to [the inclusion of] thirteen allegedly imprudent funds." *See id.* at 129, 132-33. By contrast, Plaintiff points to no allegation here that offering a Great West GIC in the 403(b) Plan required offering one in the 401(k) Plan. Regardless, because Plaintiff disclaims knowledge of "Defendants' decision-making process," Compl. ¶ 83, he cannot satisfy *Boley*, which would have required alleging (at minimum) that the GICs were subject to the same "evaluation process," 36 F.4th at 131-32.

### 2. Plaintiff Does Not Plausibly Allege a Breach of the Duty of Prudence.

On the merits, Plaintiff must plausibly allege that the Great West GICs materially underperformed "meaningful benchmarks." MTD 25-28. But Plaintiff

11

has done no such thing. His Complaint instead maintains that the Great West GICs (sometimes) provided lower crediting rates than cherry-picked comparators, without plausibly alleging that those comparators shared any relevant characteristics. *Id.* at 28-35. Plaintiff's allegations thus reduce to observing that at some point, some funds, somewhere, offered better rates than the Great West GICs. Courts consistently deem such allegations insufficient to plead imprudence. *Id.* at 26-28; *e.g.*, *Cho v. Prudential Ins. Co. of Am.*, 2021 WL 4438186, at *9 (D.N.J. Sept. 27, 2021).

**i.** Plaintiff principally responds by denying any obligation to plead meaningful benchmarks. Opp. 13-14, 16-18. But that argument misunderstands the nature of a duty-of-prudence claim. The central question in such a challenge is whether a fiduciary employed an appropriate *process*. MTD 25. Since Plaintiff disclaims any knowledge of Defendants' actual decisionmaking processes, Compl. ¶ 83, he must instead allege facts that plausibly imply that those processes were imprudent, MTD 25-27. And where the alleged imprudence concerns the selection of investment options, the only way to do this is to allege that the chosen investments fell below some meaningful benchmark. Without such allegations, it is impossible to divide "the plausible sheep from the meritless goats." *Dudenhoeffer*, 573 U.S. at 425.

For those reasons, courts—including the Third Circuit—have consistently held plaintiffs to this meaningful-benchmark standard. MTD 26-27; *contra* Opp. 13.

As the Tenth Circuit correctly understood, *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1147-48 (10th Cir. 2023), the Third Circuit employed that test in *Sweda v. University of Pennsylvania*, which assessed whether the relevant investment options "underperformed appropriate benchmarks," 923 F.3d 320, 331 (3d Cir. 2019).  Likewise, in *Mator v. Wesco Distribution, Inc.*, the court "agree[d] with" the "articulation of the relevant law" in a recent Eighth Circuit decision that applied a meaningful-benchmark analysis.  102 F.4th 172, 188 (3d Cir. 2024) (citing *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278-79 (8th Cir. 2022)).[3]  Not surprisingly then, district courts in this Circuit routinely dismiss imprudence claims for failing to plausibly allege meaningful benchmarks.  *E.g.*, *Cho*, 2021 WL 4438186, at *7-11; *Seibert v. Nokia of Am. Corp.*, 2023 WL 5035026, at *6 (D.N.J. Aug. 8, 2023); *Johnson v. PNC Fin. Servs. Grp., Inc.*, 2021 WL 3417843, at *4 (W.D. Pa. Aug. 3, 2021).

There is good reason for this approach.  Anything less would allow plaintiffs to unlock burdensome discovery without establishing that their allegations of imprudence are "plausible."  *Dudenhoeffer*, 573 U.S. at 425; MTD 26.  As such,

---

[3] Contrary to Plaintiff's claim, Opp. 13, *Mator* did not refuse to "adopt any rules" for comparisons; it simply declined to draw "bright lines … limiting comparator size or requiring a specific number of comparators," 102 F.4th at 187. Far from abrogating the standard articulated in *Sweda*, *Mator* carefully considered whether the plaintiff's "comparisons between [his] Plan and other [comparator] plans … [were] sufficient to plausibly state a claim." *Id.* at 185-88.

even Plaintiff's own cases require some indicia of an imprudent process (however labeled).   One denied a motion to dismiss because the plaintiffs had alleged "substantial circumstantial evidence" of an imprudent investment.  *Binder v. PPL Corp.*, 2024 WL 1096819, at \*3 (E.D. Pa. Mar. 12, 2024).  Another recognized the need for "specific factual allegations comparing the Plan's investment options to similar lower-cost alternatives."  *Pinnell v. Teva Pharms. USA, Inc.*, 2020 WL 1531870, at \*5 (E.D. Pa. Mar. 31, 2020).  And while a third noted the possibility of pleading imprudence without a comparator, it also held that where, as here, "a plaintiff asks a court to infer that a fiduciary used improper methods based on the performance of the investments … , he must compare that performance to funds or investments that are meaningfully similar."  *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1023 (9th Cir. 2025).  Indeed, *Plaintiff himself* alleged that analyzing "investment returns" requires "appropriate industry-recognized 'benchmarks' and prudently managed equivalents."  Compl. ¶ 76.  In short, one way or the other, Plaintiff bears the burden to allege meaningful benchmarks.

**ii.**  Plaintiff has not met that burden here.  He does not dispute that he asks this Court to infer imprudence from underperformance—in fact, he doubles-down on that theory.  Opp. 15 (admitting that "the crux of the Complaint is that *the risk-reward trade off did not actualize*").  But he does not (and cannot) explain why the purported benchmarks he selected for that purpose are meaningful.  Instead, he

14

devotes his response to downplaying considerations *his own Complaint* deemed essential—often through ipse dixit assertions that appear nowhere in that document. *E.g.*, Opp. 17-18.  His efforts fail.

*First*, Plaintiff protests that Defendants ignore "critical allegations explaining the comparability of other funds."  Opp. 14.  But apart from "crediting rates," Plaintiff cites no allegations explaining how his hand-picked comparators stack up against the GICs on any of the *nine other factors* he admits must be evaluated when selecting "stable value investment options"—let alone the other considerations Defendants identified.  Compl. ¶ 82; MTD 34-35.  He does not explain, for example, whether his comparators offer minimum guaranteed rates, tie up participant funds for extended periods of time, impose penalties on withdrawals or transfers, or mandate the use of an insurer's own recordkeeping services.  MTD 29-30.  And without such allegations—which bear on the rate of return an insurer would be willing to offer—Plaintiff has failed to identify an apples-to-apples comparison.  *Id.*

The closest Plaintiff comes going beyond crediting rates is his allegation that the Great West GICs are "general account products."  Compl. ¶¶ 89-91.  According to Plaintiff, this (i) makes the GICs the "riskiest type of stable value fund" and (ii) thus allows him to benchmark them against *all other stable value funds*.  Opp. 14-16.  But this is facially implausible.  A general-account GIC is only "risk[y]" if its issuer is in danger of default.  *Id.* at 14, 17; Compl. ¶¶ 91-92.  And the Complaint is

15

devoid of any allegation that Great West—a major insurer—faces such risk. Moreover, at most, this would account for only one of the other considerations Plaintiff identifies in his Complaint—"[i]ssuer financial strength."  Compl. ¶ 82. And for the reasons described above, *supra* p. 15, that additional datapoint does not render the Great West GICs "meaningfully similar" to every other stable value product in the marketplace. *Anderson*, 137 F.4th at 1023.

*Second*, Plaintiff repeatedly attempts to brush aside unfavorable precedent on the grounds that *this case* involves GICs, while *those cases* involved mutual funds. *E.g.*, Opp. 12, 14, 16, 18.  Like his attempt to distinguish standing cases because they arose under the "Fair Credit Reporting Act" rather than ERISA, Opp. 11, Plaintiff cites no authority (and offers no explanation) for his view that immaterial *factual* distinctions alter governing *legal* standards.  And in fact, courts considering challenges to stable value products routinely apply the analysis articulated above. *E.g.*, *Lalonde v. Mass. Mut. Ins. Co.*, 728 F. Supp. 3d 141, 156-57 (D. Mass. 2024). In any event, such distinctions are particularly inapt here, as Defendants are largely pointing to considerations *Plaintiff himself* identified as appropriate for stable value products.  Compl. ¶¶ 80-82.

*Finally*, Plaintiff offers no explanation for why his hand-picked benchmarks change year-over-year.  MTD 31-32.  As Defendants detailed, this revolving-door approach means Plaintiff has not alleged the "consistent" underperformance needed

16

to infer a deficient process. *Cho*, 2021 WL 4438186, at *9. After all, to plausibly infer a deficient process over a five-year period, Plaintiff would need to allege comparators that materially outperformed the Great West GICs throughout that same period. He has not done so. MTD 31-32. And while Plaintiff disputes the need to allege consistent underperformance, the weight of authority is against him. MTD 32-33; *e.g.*, *Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 163 (E.D.N.Y. 2022) (collecting cases).

Plaintiff falls back on his allegations that the TIAA GIC outperformed the Great West GICs throughout the relevant five-year period. Opp. 19-20. But even assuming a single comparator sufficed, *contra* MTD 33, that only begs the underlying question: whether the TIAA GIC is a meaningful benchmark. And for the reasons Defendants previously identified, it is not. *Id.* at 33-35 (explaining, inter alia, that while the Great West GICs are highly liquid, the TIAA GIC is not).

At bottom, then, Plaintiff's position boils down to the idea that the Great West GICs underperformed some other GIC, somewhere, for some period of time. As courts have routinely concluded, that is insufficient to infer a flawed process. MTD 26-28. This Court should reach the same result here.

## C. Plaintiff Fails To State a Plausible Claim Regarding the 401(k) Plan's Recordkeeping Fees.

That leaves only Plaintiff's allegations regarding purportedly excessive recordkeeping fees. As Defendants have explained, those allegations fail because

17

Plaintiff again compares apples to oranges. In particular, Plaintiff used one methodology to calculate recordkeeping fees for his comparators and a different methodology to calculate those same fees for the 401(k) Plan. MTD 36-40. And to make matters worse, Plaintiff made this comparison without accounting for revenue-sharing credits, which would lower the Plan's alleged costs well below not only the proposed comparators but also the $28 benchmark *Plaintiff himself* presents as reasonable. *Id.* at 40-41.

Plaintiff's opposition brief does not meaningfully dispute those conclusions. In fact, Plaintiff *admits* that he employed an apples-to-oranges comparison. Opp. 22-23. What is more, he insists that it was perfectly acceptable for him to do so. *See id.* And he maintains that Defendants' contrary arguments are foreclosed by the Supreme Court's decision in *Cunningham v. Cornell University*, 604 U.S. 693 (2025). He is mistaken.

To begin, *Cunningham* is not a get-out-of-jail-free card. That decision interpreted 29 U.S.C. § 1108(b)(2)(A), which allows plan fiduciaries to engage in otherwise prohibited transactions when the compensation at issue is "reasonable." *Cunningham* did nothing more than hold that § 1108(b)(2)(A) is an affirmative defense, rather than an element that plaintiffs must plead in the first instance. *See* 604 U.S. at 701, 703. That, of course, did not alter the longstanding rule that a complaint may be dismissed under Rule 12(b)(6) when an affirmative defense

18

"appears on its face." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001). That is Defendants' argument here. MTD 3, 36, 41 (arguing it is "evident on the face of [the] complaint" that costs are "reasonable"). *Cunningham* thus poses no bar to Defendants' defense of the prohibited transaction claim. And insofar as Plaintiff alternatively raises a duty-of-prudence claim, MTD 35, *Cunningham* has no bearing whatsoever.

As for Plaintiff's claim that identifying some comparator—however inapt— suffices, Plaintiff again misunderstands governing law. This is not a case involving "factual and legal disputes" or questions as to "how [Plaintiff] calculated the fees alleged in the complaint." Opp. 22-23. To the contrary, there is no dispute as to what Plaintiff did here. First, he calculated alleged recordkeeping fees for his comparators using direct compensation reported in Schedule C their Form 5500s. MTD 29-38. Then, even though those same numbers were available to him on the Plan's Form 5500s, he chose to use *completely different* figures reported in Auditor's Reports attached to those Forms. *Id.* at 39-40. And in doing so, he did not address the revenue-sharing credits disclosed in the same section of those Auditor's Reports. *Id.* at 40-41.

None of Plaintiff's cases suggest such an approach is remotely acceptable. Even the decisions he trumpets require the "Complaint as a whole [to] state[] a plausible claim." *Kruchten v. Ricoh USA, Inc.*, 2024 WL 3518308, at *4 (3d Cir.

19

July 24, 2024) (unpublished).  And on that front, Plaintiff offers no explanation for how his mix-and-match methodology could create "the implication … that the Plan overpaid."  *Mator,* 102 F.4th at 181.  After all, "[c]omparing apples and oranges is not a way to show that one is better or worse than the other."  *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020); *Mator*, 102 F.4th at 187 ("disregard[ing]" proposed comparators because they omitted a key component of the relevant fees (*i.e.*, indirect costs), and thus "underreported the total fees paid").

Perhaps recognizing this reality, Plaintiff asserts that even on "Defendants' version of events," the "Plan paid above reasonable rates for majority of the Class Period."  Opp. 23.  Not so.  Consider the below comparison between (i) the average costs for Plaintiff's comparators (Compl. ¶ 102); (ii) the Schedule C costs for the 401(k) Plan (*i.e.*, an apples-to-apples comparison) (MTD 37-39); and (iii) the Auditor's Report costs for the 401(k) plan, incorporating the revenue-sharing sharing credits (MTD 40-41 & n.17):

20

| Year | Average Costs of Comparators (Schedule C) | Costs of 401(k) Plan (Schedule C) | Costs of 401(k) Plan, with Revenue-Sharing (Auditor's Report)[4] |
|---|---|---|---|
| **2019** | $26.25 | $34.60 | $32.96 |
| **2020** | $27.20 | $15.61 | $13.45 |
| **2021** | $25.50 | $14.99 | $15.39 |
| **2022** | $29.80 | $43.58 | $16.92 |
| **2023** | $31.00 | $31.33 | $17.55 |
| **Average total** | $27.95 | $28.02 | $19.25 |

This comparison makes crystal clear that—if assessed apples-to-apples—the 401(k) Plan's recordkeeping costs would be in line with Plaintiff's hand-picked comparators. To be sure, the Plan's Schedule C costs marginally exceeded Plaintiff's $28 benchmark from time to time. Opp. 23. But imparting any significance to those discrepancies ignores that Plaintiff's chosen benchmark is a *five-year average*. Compl. ¶¶ 122, 124. And on that front, the Plan is within a few cents ($28.02). In any event, incorporating the revenue-sharing credits would bring the 401(k) Plan's costs *well below* both the comparators and the benchmark. Accordingly, the Plan's fees were perfectly reasonable on the face of the Complaint.

---

[4] These numbers are derived using the methodology in Defendants' initial brief, MTD 40-41; the line-item for "recordkeeping fees" was only added in 2023, DOL, Instructions for Form 5500, at 2, https://www.dol.gov/sites/dolgov/files/EBSA/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500/2023-instructions.pdf.

**D.    The Complaint Fails To State a Failure-to-Monitor Claim.**

Because Plaintiff's principal claims fail, his derivative failure-to-monitor claim should also be dismissed.

## CONCLUSION

For those reasons, the Court should dismiss Plaintiff's Complaint.

November 21, 2025                              Respectfully submitted,

                                              */s/ Joseph N. Parsons*

Miguel F. Eaton*
David T. Raimer*                              Joseph N. Parsons
Damarr M. Butler*                             PA Atty. ID 316724
Thomas E. Hopson*                             JONES DAY
JONES DAY                                     500 Grant Street, Suite 4500
51 Louisiana Ave., NW                         Pittsburgh, PA 15219-2514
Washington, DC  20001                         Tel.: (412) 391-3939
Tel.: (202) 879-3939                          Fax: (412) 394-7959
Fax: (202) 616-1700                           jparsons@jonesday.com
meaton@jonesday.com
dtraimer@jonesday.com
thopson@jonesday.com


                                              *Counsel for Defendants*


*\*Pro hac vice application forthcoming*

22

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2025, I filed the foregoing memorandum via the Court's CM/ECF system, which effected service on all counsel of record:

Dated: November 21, 2025                /s/ Joseph N. Parsons

                                        *Counsel for Defendants*

23

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the Order that this Court issued on September 5, 2025, because it contains 4,999 words, as counted using the word-count function on Microsoft Word software.

Dated: November 21, 2025  /s/ Joseph N. Parsons

*Counsel for Defendants*

24